IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT

OCT - 5 2007

MAURECE KAVEL,

    Petitioner,

vs.

    No. CIV 07-508 MV/LFG

GEORGE TAPIA, Warden,

    Respondent.

### ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION, DISMISSING ACTION, AND DENYING SECOND MOTION FOR APPOINTMENT OF COUNSEL

THIS MATTER comes before the Court on the Magistrate Judge's Findings and Recommended Disposition [Doc. 9], on Petitioner Maurece Kavel ("Kavel")'s objections to the Magistrate Judge's recommendation [Doc. 14], and on Petitioner's Second Motion for Appointment of Counsel [Doc. 13].

After the Magistrate Judge found that Kavel's petition was time-barred and recommended that the action be dismissed, Kavel sought and received an extension of time until August 31, 2007 within which to file his objections to the recommended disposition. [Doc. 12]. Even with this extension, Kavel filed his objections ten days late, on September 10, 2007. [Doc. 14]. He also filed a Second Motion for Appointment of Counsel [Doc. 13] on that date.

Kavel is no longer incarcerated, having been released on parole on July 8, 2007 [*See* Docs 7, 8]. He does not give any explanation as to why he could not have filed his objections in a timely manner, particularly in light of his release from custody, nor did he request a further extension. The Court finds, therefore, that Kavel's objections are untimely; the Magistrate Judge's recommendation

could be adopted on that ground alone. Nevertheless, the Court proceeds to conduct a *de novo* review of those portions of the Magistrate Judge's Findings and Recommended Disposition to which Kavel objects, and it finds his objections to be without merit.

In his objections, Kavel states that because the New Mexico Supreme Court's final action – the denial of certiorari on his state petition for habeas corpus – was filed on January 5, 2007, he thought he had one year, until January 5, 2008, within which to file a habeas petition in federal court. In this he was mistaken. The statute of limitations under AEDPA began to run in Kavel's case on July 13, 2005, the date his conviction became final. 28 U.S.C. § 2244(d)(1)(A). Kavel did not file an appeal, instead submitting a Motion for Modification of Sentence shortly after the conviction. He then filed a state habeas petition more than a year after his conviction became final.

Kavel appears to argue that he can postpone expiration of the federal statute of limitations by delaying the filing of his state habeas petition. This is incorrect; the federal limitations period begins to run as soon as it accrues, and it is tolled only during the times that post-conviction proceedings are in process in state court. The federal statute of limitations had clearly expired by the time Kavel filed his federal petition.

> We recognize that, as a federal statute that interacts with state procedural rules, [28 U.S.C.] § 2244(d) will sometimes force a state prisoner to act expeditiously to preserve his federal claims despite the procedural lenience of state law, which may forgive substantial delay. This is especially true in a case, such as this, where the State provides no time limit for filing an initial habeas petition in the district courts. Nevertheless, Congress did not draft the federal limitations period to begin running only at the end of a particular state's exhaustion process. Instead, the statute is clear that the limitations period starts from the latest of four specific dates [in Kavel's case, on the date his conviction became final], but that the period may be tolled once the state court exhaustion process has begun.

Burger v. Scott, 317 F.3d 1133, 1138 (10th Cir. 2003).

Kavel argues that he was misinformed about the federal limitations period. He encloses a paper labeled, "Steps for Filing a State Petition for Writ of Habeas Corpus." [Doc. 14, Ex. A]. He does not indicate the source of this document. He states that the information supplied to him on this form led him to believe that he had one year after the denial of certiorari on his state habeas petition within which to file his federal petition. He contends: "If this information supplied to Petitioner does not mean State Supreme Court's Denial 1/5/07 'What could any Human Being thing [sic] and why is this there?'" [Doc. 14, at 3]. The statement on the form reads as follows:

> If you lose in the state court, you could next file a petition for writ of habeas corpus in the federal district court. You can get a packet of information and instructions as indicated on the front cover. There are strict deadlines for filing a federal habeas corpus petition. You must file within one year from the last official event in your case. The time stops running while your state habeas corpus petition is under review, and starting [sic] running again when the mandate is issued. If you have questions about federal habeas, call the Federal Public Defender at 346-2489 in Albuquerque.

[Doc. 14, Ex. A, at 2]. This statement is accurate, and while it may not be a model of clarity, it is sufficient to alert a person convicted of a crime that the federal habeas statute of limitations begins to run, and continues to run, until he takes some action at the state level to initiate post-conviction proceedings. A limitations period cannot "stop running" unless it has already started to run at an earlier date.

Kavel argues further that he attempted to file his federal habeas petition prior to April 2, 2007, the date the federal limitations period expired. He states that he initially mailed his habeas petition to the federal court on January 22, 2007 but that it was returned undelivered. He says that he tried again on January 31, 2007 and again received his petition back, undelivered and unfiled. He says that he then showed the returned envelopes to a paralegal at SNMCF, the facility where he

was incarcerated at the time. The paralegal discovered that the federal habeas forms she had supplied to Kavel were incorrect in that they contained the wrong address for submitting the forms to the Court. Kavel says that the paralegal then gave him the correct address, and he thereafter made inquiries and discovered that he had no case pending in federal court. He was eventually successful in getting his petition filed in federal court on May 22, 2007.

As exhibits, Kavel submits copies of the two envelopes in which, he says, he twice mailed his petition in January 2007. The envelopes do not contain dates. A different exhibit indicates that Kavel did make some attempt in January to prepare to file his federal petition, and the Court will assume that he did mail his petition twice in January, to an incorrect address. [Doc. 14, Exs B,C]. However, it appears as well that Kavel made no further attempt to file his federal petition, nor to obtain any further information regarding the correct address or correct procedures for filing a federal habeas petition, until early May 2007. [Doc. 14, Exs. D, E]. During the period between January and May 2007 the limitations period was running and, in fact, it expired on April 2, 2007.

Kavel argues that his January attempts to file the federal petition constitute the sort of extraordinary circumstances which would justify equitable tolling of the statute of limitations. He says he "did all any person could do to file petition on time." [Doc. 14, at 3]. The Court does not agree. As noted above, there is no indication that Kavel did anything to further the filing of his federal petition between January and May 2007. Although his misunderstanding as to the accrual date of the federal limitations period may have lulled him into a false sense of security, that is due to his own failure to read the information carefully or to make appropriate inquiries. The form he read encouraged him to call the Federal Public Defender if he had any questions; there is no indication that he did so. In any event, he provides no explanation for the four-month delay in taking action to file his federal habeas petition correctly, once he was aware that the address he had

4

been using was inaccurate.

Equitable tolling of the AEDPA limitations is a "rare and exceptional" remedy. Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). It will be applied only in "extraordinary circumstances over which [the] inmate had no control." Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). The inmate must show with specificity the steps he took to pursue his claim diligently; "simple excusable neglect," or the fact that he "simply did not know about the limitation in the AEDPA until it was too late" does not suffice to toll the statute. Gibson v. Klinger, *supra*, at 808; Miller v. Marr, *supra*, at 978. In Marsh v. Soares, 223 F.3d 1217 (10th Cir. 2000), the Tenth Circuit held that neither ignorance of the law, nor the inmate's reliance on a prison inmate law clerk who delayed drafting of his petition, would excuse prompt filing.

The prison "mailbox rule" provides that a document is considered "filed" on the date it is given to prison authorities for forwarding to the court. *See*, Houston v. Lack, 487 U.S. 266, 108 S. Ct. 2379 (1988); Hoggro v. Boone, 150 F.3d 1223, 1226 n.3 (10th Cir. 1998); Rules Governing Section 2254 Cases, Rule 3(d). This is true "regardless of when the court itself receives the documents." Price v. Philpot, *supra*, at 1164. In this case, the Court never received the documents mailed by Kavel in January, so it is doubtful whether the mailbox rule is applicable to those documents. In any event, Kavel has not complied with the requirements for application of the mailbox rule; that is, he has not established that he either used the prison's legal mail system, if any, as opposed to regular prison mail; or alternatively, that he submitted the requisite declaration in compliance with 28 U.S.C. § 1746. Price v. Philpot, 420 F.3d 1158, 1165 (10th Cir. 2005); United States v. Leonard, 937 F.2d 494, 495 (10th Cir. 1991); Fogle v. Estep, 220 Fed. Appx. 814, 816 (10th Cir. 2007) ("unsworn allegations" as to the date the document was mailed are insufficient).

Even if Kavel had complied with these requirements, it is unclear whether the mailbox rule

applies to a piece of mail which the inmate has mis-addressed. The "mailbox rule," as set forth in Houston v. Lack, is grounded on the assumption that a *pro se* prisoner has little control over the delivery of a document to a court clerk. The rule was designed to provide assistance to a prisoner who has "done all that could reasonably be expected to get the letter to its destination within the required [time]." Id., 487 U.S. at 270. However, "[f]ailure to stamp or properly address outgoing mail or to follow *reasonable* prison regulations governing prisoner mail does not constitute compliance" with the obligation to do all that is reasonably necessary to get the mail to the clerk of court on time. Thompson v. Rasberry, 993 F.2d 513, 515 (5th Cir. 1993) (emphasis in original).

It has been held that a prisoner acts reasonably for purposes of the mailbox rule if he relies on a directory provided by the prison library for the address of the court. Mayne v. Hall, 122 F. Supp. 2d 86 (D. Mass. 2000); Lindsey v. City of Cleveland, No. 1:04 CV 2239, 2007 WL 782172 (N.D. Ohio Mar. 13, 2007). It may be that Kavel was given an obsolete address for this Court by prison authorities. However, in both Mayne and Lindsey, the inmates acted expeditiously to correct the problem as soon as they discovered it. Kavel did not do that. A reasonable person would have been alerted to the fact that he had used the wrong address for the Court, when his first petition was returned undelivered. Kavel does not explain why he failed to take steps to ascertain the correct address before mailing the petition again. In light of these two returns, Kavel had no basis for believing that anything had been filed with the Clerk of Court. He does not explain why he then waited approximately four months before making inquiries about his case. This course of proceeding indicates a lack of diligence, which is unexcused by his incorrect assumption as to the date when the statute of limitations was set to expire on his claim.

The Court finds no grounds for equitable tolling nor for application of the mailbox rule, and adopts the recommendation of the Magistrate Judge that the petition be dismissed for Kavel's failure

to file in a timely manner.

Kavel again seeks appointment of counsel, relying on arguments he raised in earlier motions including the allegation that he is mentally disabled and incompetent to represent himself in this matter. [Doc. 13]. In denying habeas relief to Kavel, the state court found that in spite of his documented mental health problems, including major depression, anxiety and cocaine dependence, Kavel "was determined to be competent at the time of the initial plea and again at the time of the plea to violating his probation, and was found competent by an evaluation conducted at or around the time of his sentencing . . . ." [Doc. 6, Ex. L, at 4].

The Court finds that Kavel is representing himself in an able manner in this proceeding, and there are no grounds for appointment of counsel.

IT IS THEREFORE ORDERED that Petitioner's objections are overruled and the Findings and Recommended Disposition of the United States Magistrate Judge are adopted by the Court;

IT IS FURTHER ORDERED that Petitioner's Second Motion for Appointment of Counsel [Doc. 13] is denied; and

IT IS FURTHER ORDERED that the petition is denied and this action is hereby dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE